# United States Court of Appeals
## For the First Circuit

---

No. 01-1767

UTICA MUTUAL INSURANCE COMPANY,

Plaintiff, Appellee,

v.

WEATHERMARK INVESTMENTS, INC., ETC.,

Defendant, Appellant,

---

HALL EQUIPMENT, INC., ET AL.,

Defendants.

---

No. 01-1768

UTICA MUTUAL INSURANCE COMPANY,

Cross-Appellant,

v.

WEATHERMARK INVESTMENTS, INC., ETC.,

Cross-Appellee,

---

HALL EQUIPMENT, INC., ET AL.,

Defendants.

---

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Morris E. Lasker, Senior U.S. District Judge]

---

Before

Selya, <u>Circuit Judge</u>,

Cyr, <u>Senior Circuit Judge</u>,

and O'Toole,<sup>*</sup> <u>District Judge</u>.

————————————

<u>William D. Gillis, Jr.</u>, with whom <u>Gerald E. Libby II</u> and <u>Massery & Gillis, LLP</u> were on brief for defendant, appellant.
<u>Rachel E. Smith</u>, with whom <u>Lon A. Berk</u> and <u>Shaw Pittman, LLP</u> were on brief for plaintiff, appellee.

————————————

June 11, 2002

————————————

—————————————

<sup>*</sup>Of the District of Massachusetts, sitting by designation.

2

**CYR**, <u>**Senior Circuit Judge**</u>.   Weathermark Investments ("Weathermark"), operator of a home-heating oil business, appeals from a district court judgment declaring that Utica Mutual Insurance Company ("Utica") is under no contractual obligation to indemnify its insureds for costs incurred in cleaning up a fuel oil spill on Weathermark's property.   Utica in turn cross-appeals from a district court ruling entitling Utica's insureds to indemnification for nonremediation "property damages" caused by the oil contamination.   We affirm the district court judgment.

**I**

<u>**BACKGROUND**</u>

In 1994, Weathermark hired Hall Equipment, Inc. ("Hall"), to repair a fuel pump.   Due to allegedly negligent repairs performed by Hall, more than 3,000 gallons of fuel oil spilled at the Weathermark oil storage facility, some of which migrated to an adjacent property occupied by ELAW Corporation ("ELAW").   The Massachusetts Department of Environmental Protection (DEP) issued a notice of responsibility, requiring Weathermark to undertake "immediate response actions."

In due course, Weathermark and ELAW brought a state court action against Hall and its president, William Riddell, for more than $2 million in damages, including (i) their respective costs in cleaning up the oil spill; (ii) various permanent property damages due to the spill; and (iii) loss of business income and profits. As Weathermark and ELAW have settled their cross-claims and ELAW

3

has assigned its rights against Hall and Riddell to Weathermark, we advert simply to Weathermark as the party demanding damages.

The Commercial General Liability ("CGL") policy issued by Utica insured Hall and Riddell against all "sums that [they] become[] legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies," subject, inter alia, to the following coverage exclusion:

> (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, or escape of pollutants . . . .
>
> (2) [a]ny loss, cost or expense arising out of any:
>
> > (a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or
> >
> > (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

CGL policy exclusion ¶ f.

Utica commenced the instant action against Hall, Weathermark, and ELAW in federal district court, demanding a judicial declaration that policy exclusion f(2), supra, rules out any contractual responsibility to indemnify Hall and Riddell for

whatever damages ultimately may be due Weathermark in the underlying state-court actions.[1]

In due course, the district court entered partial summary judgment for Utica, declaring that ¶ f(2)(a) forecloses coverage of any cleanup costs for which Hall and Riddell are required to reimburse Weathermark and ELAW due to the oil spill, i.e., the so-called environmental "response costs." Utica Mut. Ins. Co. v. Hall Equip., Inc., 73 F. Supp. 2d 83, 87 (D. Mass. 1999). However, the district court granted partial summary judgment for Hall as well, ruling that ¶ f(2)(a) does not encompass "nonremediation" damages unrelated to Weathermark's actual removal of the spilled oil, including permanent damage to the Weathermark and ELAW properties and any diminution in their fair market value. Id. The respective parties cross-appealed from these district court rulings.

## II

## DISCUSSION

Under Massachusetts law, insurance-contract interpretations pose legal issues for resolution by the court, and, absent ambiguity, insurance contracts are to be enforced in accordance with their plain language. See Somerset Sav. Bank v. Chicago Title Ins. Co., 649 N.E.2d 1123, 1127 (Mass. 1995); Jacobs v. U.S. Fid. & Guar. Co., 627 N.E.2d 463, 464 (Mass. 1994)("[W]here

---

[1]Although Utica's complaint also sought a judicial declaration as to whether its CGL policy obligated it to defend Hall and Riddell in the underlying state court proceedings, it no longer presses this claim.

5

the words of an insurance contract are 'plain and free from ambiguity they must be construed in their usual and ordinary sense.'") (citation omitted). Moreover, insurance-contract interpretations rendered in the district court are subject to de novo review. See EKCO Group, Inc. v. Travelers Indem. Co., 273 F.3d 409, 412 (1st Cir. 2001). "[I]insurance policies should be construed as a whole 'without according undue emphasis to any particular part over another.'" Mission Ins. Co. v. U.S. Fire Ins. Co., 517 N.E.2d 463, 466 (Mass. 1988)(citation omitted). Only where a contractual term is ambiguous does its interpretation pose a question of fact, and though the parties may adduce extrinsic evidence of their respective intendments, any residual ambiguity must be resolved against the insurer. See Preferred Mut. Ins. Co. v. Gamache, 686 NE.2d 989, 991 (Mass. 1997). Most importantly in the present context, coverage exclusions are to be strictly construed against the insurer. See id.

## A.   The Weathermark Appeal

The district court determined that, if successful, the state-court claim Weathermark brought for reimbursement of its past and future response costs would constitute an "expense arising out of a[] . . .[r]equest, demand or order that any insured or others . . . in any way respond to . . . the effects of pollutants," Policy ¶ f(2)(a); and, consequently, that any recovery realized by Weathermark in its lawsuit would be excluded from coverage under the CGL policy issued to Hall and Riddell.

6

Weathermark maintains on appeal that the district court erred in failing to infer the meaning of Policy ¶ f(2)(a) through reference to ¶ f(2)(b), which excludes from coverage "[a]ny loss, cost or expense arising out of any . . . [c]laim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any responding to, or assessing the effects of pollutants." Adverting to the familiar maxim that general contract language normally must yield to more particular language, Weathermark contends that (i) the undefined phrase "[r]equest, demand or order," appearing in ¶ f(2)(a), is too general to denote a lawsuit, and (ii) since ¶ f(2)(b) explicitly addresses the subject of lawsuits, Utica needed to specify in ¶ f(2)(b) that both governmental and private-party lawsuits were to be excluded from coverage.

The merits of these contentions need not be addressed, however, since Weathermark failed to raise them below, see Utica Mut. Ins. Co., 73 F. Supp. 2d at 87-88, and issues first asserted on appeal must be deemed waived, see Vanhaaren v. State Farm Mut. Auto. Ins. Co., 989 F.2d 1, 4-5 (1st Cir. 1993). Instead, Weathermark merely invited the district court to compare ¶ f(2)(a) and ¶ f(1), rather than ¶ f(2)(a) and ¶ f(2)(b). Moreover, Weathermark subsequently abandoned the former comparison as a ground for the instant appeal.[2]

---

[2]Nor did the district court ruling constitute plain error. See Ferrara & DiMercurio v. St. Paul Mercury Ins. Co., 240 F.3d 1,

7

Similarly, since the remaining arguments Weathermark asserts on appeal were never raised below, they are deemed waived. See id. Weathermark now argues, on public policy grounds, that the interpretation given ¶ f(2)(a) by the district court would enable Utica to exclude coverage based on the mere fortuity as to whether the third party seeking reimbursement was served with a "request," such as a notice of responsibility issued by an environmental enforcement agency. Weathermark adds that its theory was "apparently recognized" in the memorandum submitted in support of Utica's motion for partial summary judgment. Be that as it may, Weathermark presented no argumentation on this theory in opposition to Utica's motion for partial summary judgment. Consequently, the

---

13 (1st Cir. 2001) (waived issue may be reversed for plain error; i.e., only if it is egregious in nature and results in manifest miscarriage of justice). First, although "[t]his pollution exclusion clause is uniformly used by the insurance industry in general commercial liability policies," Byrd v. Blumenreich, 722 A.2d 598, 600 (N.J. Super. Ct. App. Div. 1999), Weathermark can unearth no case authority supporting its interpretation of ¶ f(2)(a). While not necessarily conclusive, its failure to cite such authority does suggest that insureds generally have not advocated the contract interpretation belatedly advanced on appeal by Weathermark.

Second, although arguably the Utica pollution exclusion clause might have been more artfully drafted, we are required to "interpret policy language in accordance with the common meaning of the words used, from the viewpoint of a reasonable insured." Davis v. Allstate Ins. Co., 747 N.E.2d 141, 149 (Mass. 2001); Atl. Mut. Ins. Co. v. McFadden, 595 N.E.2d 762, 764 (Mass. 1992). In ordinary usage, the term "demand" indicates an act of "claim[ing] or seek[ing] as due by right." Webster's New Universal Unabridged Dictionary 482 (2d ed.) ("[I]n law, to summon to court."). Even in legal parlance, the term "demand" is primarily defined as "[t]he assertion of a legal right; a legal obligation asserted in the courts." Black's Law Dictionary 386 (5th ed. 1979) (emphasis added).

8

district court never reached it.[3]  The raise-or-waive rule serves to forfend against "sand-bagging," <u>viz.</u>, reserving legal theories for initial use on appeal.

Finally, Weathermark maintains, were we to declare the pollution exclusion ambiguous, we should consider "extrinsic evidence" as to the parties' intent, <u>see</u>, <u>e.g.</u>, 1 Gibson & McLendon, <u>Commercial Liability Insurance</u>, Annotated Policy, at V.D. (1988), even though Weathermark concedes, as it must, that it never raised its "extrinsic evidence" argument below.  Nonetheless, Weathermark urges, since appellate interpretations of insurance contracts are plenary, <u>see</u> <u>EKCO Group, Inc.</u>, 273 F.3d at 412, we should allow it to advance any alternative argument on appeal.  Of course, controlling authority is to the contrary:  "although the court of appeals affords de novo review to orders granting summary judgment, it will not reverse such an order on the basis of arguments that were not made in the trial court."  <u>Higgins</u> v. <u>New Balance Athletic Shoe, Inc.</u>, 194 F.3d 252, 258 (1st Cir. 1999).

---

[3]Nor was there plain error.  The district court ruled that Weathermark's state-court <u>lawsuit</u> constituted the "request, demand, or order" which triggered the ¶ f(2)(a) pollution exclusion.  As previously noted, Weathermark waived any appellate challenge to that ruling.  Accordingly, it is immaterial whether the notice of responsibility which Weathermark received from the Massachusetts Department of Environmental Protection constituted a "request, demand, or order."  <u>See</u> <u>Smith</u> v. <u>Kmart Corp.</u>, 177 F.3d 19, 26 (1st Cir. 1999) (on 'plain error" review, appellant must meet its burden to establish that an alleged error was prejudicial).

**B.    The Utica Cross-Appeal**

The district court determined that ¶ f(2)(a) neither encompasses the "non-remediation" damages incurred by Weathermark, nor any costs unrelated to actual removal of the spilled oil from the Weathermark and ELAW properties, such as permanent property damages, diminution in the fair market value of the properties, or losses of rental or through-put income.   Utica asserts in its cross-appeal that the district court erred in three respects.   Its conclusions may be summarized as follows:

First, these nonremediation damages nonetheless constituted a "loss, cost or expense arising out of a[] . . . demand . . . that [Hall] . . . in any way respond to . . . the effects of pollutants," since such nonremediation damages arose from the Weathermark lawsuit and would not have been incurred but for the oil spill.   Second, the case law uniformly supports the contract interpretation advanced by Utica.   Third, ¶ f(2)(a) notwithstanding, the diminution in the fair market value of property and the loss of rental or through-put income are independently excluded from coverage since the definition of "property damage" contained in the CGL policy - viz., "physical injury to tangible property" or "loss of use of tangible property" plainly does not encompass these types of intangible economic losses.   We address these contentions in turn.

First, irresolvably ambiguous coverage exclusions are to be strictly construed against the insurer.   See Preferred Mut. Ins. Co., 686 N.E.2d at 991.   At first glance, the ¶ f(2)(a) phrases

10

here involved - "in any way respond" and "effects of pollutants" - appear to be fairly broad, arguably even encompassing all property damages resulting from an oil spill. Yet construing the insurance policy as a whole, as required, see Mission Ins. Co., 517 N.E.2d at 466, we agree with the district court that an insured reasonably could construe the term "respond" as delimiting the scope of ¶ f(2)(a) to recoveries of remediation costs.

Contrary to the contention advanced by Utica, the term "demand," appearing in ¶ f(2)(a), does not necessarily contemplate the entire lawsuit Weathermark filed in state court. Rather, "demand" may simply refer to an individual claim asserted in a lawsuit; here, the claim for reimbursement of remediation costs. See supra note 2. When real property becomes contaminated by a pollutant, two distinct types of damages frequently result. First, remediation damages obtain in the form of the expense incurred in the containment and removal of the pollutant, to the extent practicable, so as to return the property to its preexisting environmental condition. Thus, in the parlance of environmental law, costs incurred in rehabilitating a contaminated property to its preexisting environmental condition typically are referred to as "response costs." See, e.g., Mass. Gen. Laws. Ann. ch. 21E, § 4 ("Response actions."). Accordingly, for example, normally the notice of responsibility issued by the DEP would not additionally demand that the remediating party remediate other property damage caused by the contamination, unless it too posed an environmental threat. In the present case, even though the oil in situ itself

11

constituted "property damage," see Hazen Paper Co. v. Fid. & Guar. Co., 555 N.E.2d 576, 583-84 (Mass. 1990), that is not to say that other consequential or incidental property damage may not have been caused, which the mere removal of the spilled oil would not remedy.

Thus, by employing the term "respond" in ¶ f(2)(a), the Utica pollution exclusion gave rise to an ambiguity, particularly since the preceding listing of activities pertained exclusively to remediation efforts - viz., testing or monitoring for, cleaning up, removing, or containing the pollutant. Compare Mass. Gen. Laws. Ann. ch. 21E, § 4 ("Response actions."), with id. § 5(a)(iii) (making responsible parties liable "to any person for damage to his real or personal property incurred or suffered as a result of such release or threat of release").

Further, ¶ f(1) specifically excludes from coverage "'property damage' arising out of the actual . . . discharge . . . of pollutants," yet lists only four circumstances in which the exclusion applies, none of which pertain to the insureds Hall and Riddell. See Aldridge v. A.T. Cross Corp., 284 F.3d 72, 84 (1st Cir. 2002) (court of appeals may affirm district court on any ground apparent in record). "It is a well settled rule of construction for insurance policies that 'a specific provision relating to a particular subject will govern in respect to that subject, as against a general provision even though the latter, standing alone, would be broad enough to include the subject to which the more specific provision relates." So. Cal. Edison Co. v. Harbor Ins. Co., 148 Cal. Rptr. 106, 112, 83 Cal. App. 3d 747, 759

12

(Ct. App. 1978) (citation omitted); see also Transamerica Leasing, Inc. v. Inst. of London Underwriters, 267 F.3d 1303, 1308 (11th Cir. 2001); 13 John A. Appleman & Jean Appleman, Insurance Law and Practice § 7357, at 181 (1979 & Supp. 2002). Thus, even though the reference, in ¶ f(2)(a), to "effects of pollutants" - standing alone - may be exceedingly broad, the preceding specific reference to "property damage" in ¶ f(1) supersedes it, rendering it ambiguous insofar as it may purport to encompass nonremediation damages. Moreover, had Utica so intended, it readily could have obviated any ambiguity. See, e.g., Gaylord Container Corp. v. CNA Ins. Cos., 807 So.2d 864, 870 (La. Ct. App. 2001) (adding final sentence to ¶ f(2)(a)-like pollution exclusion: "To the extent that any of the above is determined to be . . . 'Property Damage,' said . . . 'Property Damages' [are] also excluded.").

Second, the unreported cases cited by Utica are either inapposite or unpersuasive.[4] For instance, Manufacturers Gasket Co. v. Transcom, No. 93-3108 (6th Cir. Dec. 6, 1993), merely held that the pollution exclusion barred coverage for a private lawsuit seeking to recover "costs for pollutant cleanup." The issue of nonremediation damages was never mentioned. In Coal Heat v. United States Fidelity and Guaranty Co., 2000 WL 1680713 (E.D. Pa. Nov. 2, 2000), the court specifically rejected the remediation-

---

[4]Normally, unpublished opinions are not to be cited. See 1st Cir. Local R. 36.2(b)(2)(F); United States v. Meade, 110 F.3d 190, 202 (1st Cir. 1997). Here, however, we do not cite unpublished opinions as authority. Rather, we mention these opinions merely to demonstrate that they would not aid Utica's cause, even assuming they had some precedential effect, which they do not.

13

nonremediation distinction drawn in <u>Utica Mutual Ins. Co.</u> v. <u>Hall Equipment,. Inc.</u>, 73 F. Supp. 2d 83 (D. Mass. 1999), citing cases from other jurisdictions in which the courts "[broadly] interpreted the phrase 'arising out of' in the Pollution Exclusion to indicate a 'but for' or 'causal' relationship between the damage claimed and the released pollutants." <u>Id.</u> at *7. Nevertheless, the phrase "arising out of" does not modify "effects of pollutants," but purports simply to require some causal connection between the "loss" <u>and</u> <u>the</u> "<u>demand</u>." As already noted, exclusion ¶ f(2)(a) does not use the term "suit," and although a suit may be a "demand," the term "demand" does not necessarily comprehend a lawsuit, but instead may simply refer to <u>a</u> claim asserted in a lawsuit. <u>See</u> <u>supra</u> note 2. Accordingly, the underlying premise in <u>Coal Heat</u> is flawed, since "demands" for remediation costs are segregable from demands for nonremediation property damages.

Finally, we need not address the Utica contention that some of these nonremediation damages are excludible on the independent ground that the "property damage" definition contained in the insurance contract does not encompass these types of intangible economic losses. Nowhere in its motion for partial summary judgment did Utica urge this "separate and independent ground" for excluding coverage for this particular subset of nonremediation damages. Accordingly, its argument must be deemed waived. <u>See</u> <u>Vanhaaren</u>, 989 F.2d at 4-5.

Since ¶ f(2)(a) is ambiguous as concerns any exclusion of nonremediation property damages, it is to be construed against the

14

insurer which drafted the policy.  <u>See</u> <u>Preferred Mut. Ins. Co.</u>, 686 N.E.2d at 991.

**<u>Affirmed.  The parties are to bear their own costs</u>**.