Not for Publication in West's Federal Reporter
Citation Limited Pursuant to lst Cir. Loc. R. 32.3

# United States Court of Appeals
## For the First Circuit

No. 02-1148

LORRAINE HAZARD-CHANEY, M.D.,

Plaintiff, Appellant,

v.

OPTIMA HEALTHCARE; OPTIMA HEALTH, INC.;
CATHOLIC MEDICAL CENTER PHYSICIAN PRACTICE ASSOCIATES;
KEITH A. LAMMERS, M.D.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

Before

Selya, Circuit Judge,
Coffin, Senior Circuit Judge,
and Lipez, Circuit Judge.

Ruth A. Hall with whom Union Law Offices, LLC, was on brief for appellant.
Steven M. Gordon with whom Arpiar G. Saunders, Jr., Shaheen & Gordon, Elaine Michaud, and Devine, Millimet & Branch, PA, were on brief for appellees.

January 24, 2003

**Per Curiam**.    Appellant Lorraine Hazard-Chaney, a medical doctor, claims that, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to e-17, she was set up to fail by her employers and ultimately offered only a probationary renewal of her contract  because she is African-American.[1]  The district court granted summary judgment to her employers,[2] concluding that appellant failed to adduce sufficient evidence to counter appellees' non-discriminatory explanation for their actions. Hazard-Chaney v. Optima Healthcare, No. Civ. 00-355-B, 2001 WL 1636433 (Dec. 18, 2001).  We affirm, adding only a few thoughts to the district court's thorough opinion.

(1) Appellant maintains that the district court erred in considering unauthenticated documents submitted by appellees.  Two properly considered documents, however, suffice to support the court's determination that appellees set forth legitimate, non-discriminatory reasons for offering appellant a probationary contract instead of renewing her original agreement.  The March 10,

---

[1]  Appellant also filed state law claims of wrongful termination, defamation and intentional infliction of emotional distress, some of which were dismissed in an order that has not been appealed.  In its summary judgment ruling, the district court declined to exercise supplemental jurisdiction over the residual state law claims.

[2]  The defendants-appellees are Optima Healthcare, Optima Health, Inc., Catholic Medical Center Physician Practice Associates ("CMC PPA") and Dr. Keith A. Lammers, vice president and medical director of CMC PPA.  In its earlier, unappealed order, the district court dismissed the Title VII claim against Dr. Lammers, leaving only state law claims pending against him.

-2-

1999 letter to appellant from Dr. Keith Lammers, appellant's supervisor, which was submitted to the court by both parties, identifies the performance issues cited by appellees as the reason for their actions. In addition, Dr. Lammers stated in a properly submitted affidavit that appellant had finished last out of thirty-two physicians in nine of ten categories in a patient satisfaction survey. He further reported that he used these results in his review of appellant, as he did with all physicians he supervised, and in developing the conditions of the probationary contract he offered to her. We note, moreover, that the district court did not consider the two documents to which appellant specifically objected, and her objections to other materials are deemed waived because they were not raised below. See Utica Mut. Ins. Co. v. Weathermark Invs., Inc., 292 F.3d 77, 81 (1st Cir. 2002); Perez v. Volvo Car Corp., 247 F.3d 303, 314-15 (1st Cir. 2001). Although appellant quibbles with the statistical validity of the patient survey, it is pure speculation to suggest that any imperfections negate the overall message of its results – that appellant fared poorly compared with her colleagues.

(2) We acknowledge that the record – including letters of support from patients and an office staff member, as well as appellant's explanations for some of the circumstances cited by appellees as examples of poor performance – reflects a dispute about the quality of appellant's work. Indeed, appellant

-3-

persuasively argues that some of her difficulties were directly traceable to inadequate support from management. Nonetheless, the relevant question is not whether the employers' concerns about appellant's performance were warranted, but whether they were genuine and thus not a pretext for unlawful discrimination. As the district court recounted, the evidence of record is inadequate to permit a factfinder to conclude that racial discrimination, rather than quality concerns, was the true basis for the employer's decision.

The only evidence with racial content was a statement reported by appellant from an Optima recruiter who was about to leave the company; the district court viewed the comment as inadmissible hearsay and declined to consider it. Appellant testified in her deposition as follows regarding the statement:

> He came to tell me that he was leaving and that I should watch my back; that Dr. Lammers always referred to me as Afro – "African-American" or "black," in any of the management meetings, reminding people; the implication being that there was some sort of a – I don't know how you would refer to it, maybe low expectation as to productivity.

Appellant points to several other incidents that she views as racially motivated, including Dr. Lammers' avoiding her and her children at a reception welcoming new physicians, but nothing in the circumstances of those episodes points to race as the underlying motivation. Although appellant's practice may have been neglected in certain respects by Optima, the record does not permit

-4-

an inference that this treatment occurred because she was African-American rather than – as the company asserted – because she was a solo practitioner with comparatively low patient numbers.  In the face of a downward progression in patient satisfaction with her care, including in performance areas unrelated to the management issues, the recruiter's isolated, unsubstantiated remark – were it to be considered as non-hearsay, and even when combined with the several racially neutral incidents she cites – is insufficient to invigorate her claim of pretext.

(3) In an effort to cloak facially race-neutral actions with discriminatory significance, appellant relies heavily on a case not cited to the district court, Thomas v. Eastman Kodak Co., 183 F.3d 38 (1st Cir. 1999).  Thomas recognized that there are contexts in which evidence sufficient to defeat summary judgment can include actions indicative of discrimination that stem from "unthinking stereotypes or bias." Id. at 58.  Appellant would have us consider defendants' catalogue of complaints and neglect of her practice as examples.

But this case differs in significant respects from Thomas, where the plaintiff alleged that she was terminated as a result of "an evaluation procedure that was tainted by racial bias." Id. at 65.  There, the plaintiff asserted bias in subjective performance reviews by her superior, and she further presented "'evidence from which the trier of fact reasonably could conclude that [her]

-5-

abilities and qualifications were equal or superior to employees who were retained.'" Id. (citation omitted). That is not the case here, where appellees rely on evaluations conducted by third parties in which appellant was ranked virtually at the bottom of her colleagues as well as complaints about her performance lodged by patients and co-workers. Moreover, appellant has not presented evidence that would permit the conclusion that similarly situated non-minority employees were evaluated less harshly. Finally, appellant's status as a contract employee whose first term was expiring further distinguishes her situation from that of the plaintiff in Thomas, who was a long-time employee laid off as a result of poor ratings by a new supervisor after many years of highly rated service. On the record before us, attributing the offer of a probationary contract to racial discrimination would be "'unsupported speculation.'" Id. (citation omitted).

(4) Dr. Lammers' overnight change in approach from a termination, through non-renewal of appellant's contract, to an offer of a probationary contract is not probative of racial motivation.[3] His original statement that he was unable to continue her employment "[w]ith the current undefined future of CMC PPA" is not inconsistent with concerns about her performance, though the statement was obviously untrue. Even if Dr. Lammers was

_____

[3] Like the district court, we assume for purposes of our discussion that the offer of a probationary contract renewal was an adverse employment action within the meaning of Title VII.

-6-

deliberately evasive in the first letter, however, that particular untruth, in the context of this record, would not allow a factfinder to conclude that there was racial animus.

In sum, appellant failed to proffer evidence that would permit a jury to conclude that her employers' asserted justification for offering only a probationary contract was a pretext for race discrimination. Consequently, the district court properly entered summary judgment for defendants.

Affirmed.