**Jack NASCIMENTO, Plaintiff**

**v.**

**PREFERRED MUTUAL INSURANCE COMPANY, Defendant.**

**No. 06–30066–MAP.**

United States District Court,
D. Massachusetts.

March 20, 2007.

Kevin D. Withers, Robert L. Quinn, Egan, Flanagan & Cohen, PC, Springfield, MA, for Plaintiff.

Mark R. Freitas, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, Boston, MA, Michael J. Case, Robert D. Sullivan, Jr., Wilson, Elser, Miskowitz, Edelman & Dicker LLP, White Plains, NY, for Defendant.

### MEMORANDUM AND ORDER REGARDING DEFENDANT'S MOTION TO DISMISS (Dkt. No. 3)

PONSOR, District Judge.

## I. INTRODUCTION

Plaintiff Jack Nascimento brought this action against his insurer, Defendant Preferred Mutual Insurance Company ("Preferred Mutual"), seeking a declaration that Preferred Mutual is obligated under the terms of a Commercial General Liability Policy to defend and indemnify him in a third-party environmental liability lawsuit brought against him by adjoining property owners. The third-party suit seeks damages under Mass. Gen. Laws ch. 21E related to the remediation of real property contaminated by a leak of heating oil from an underground storage tank ("UST").[1] Preferred Mutual by way of a Motion to Dismiss seeks a declaration absolving it of any obligation to defend or indemnify Nascimento.[2] For the reasons set forth below, Preferred Mutual's motion will be ALLOWED.

## II. BACKGROUND

### A. Facts.

On January 9, 1964, Plaintiff and his wife purchased land and buildings located at 239 Hubbard Street ("239 Hubbard") in Ludlow, Massachusetts. Previously, the property had been part of a larger parcel of land that included the adjoining lot at 235 Hubbard Street ("235 Hubbard").

Plaintiff operated an auto body shop from a garage at 239 Hubbard from 1964 until his retirement in 1982. The garage was heated by an oil burner located in the basement. The burner was fueled by #2 home heating oil piped through a fuel line connected to a 1000 gallon UST located on the lot at 235 Hubbard.

The UST had been installed when 235 Hubbard and 239 Hubbard were joined as a common parcel of land. After purchasing 239 Hubbard, Plaintiff made regular use of the UST, although there is no evidence in the present record indicating whether he had purchased or leased the UST from the prior owner of the common property or held an easement permitting him to use it.

Upon his retirement, Plaintiff sold the auto body business to Ronald Andre to whom he also leased the garage at 239 Hubbard Street. In 1986, Andre in turn sold the business to Robert Terzi, who

---

1. The third-party complaint also asserts common-law claims of nuisance and continuing trespass, as well as a claim pursuant to Mass. Gen. Laws ch. 93A.

2. During a hearing held on September 19, 2006, the parties agreed to treat Preferred Mutual's Motion to Dismiss as a Motion for Summary Judgment.

continued to rent the 239 Hubbard Street garage from Plaintiff. From 1982 to 1997, Andre and Terzi purchased and stored heating oil for the garage burner in the 235 Hubbard UST.

In 1979, Tiago Leal and his wife bought the land at 235 Hubbard Street. In 1997, the Leals hired an excavating company to unearth the UST and remove it from the property. During the excavation, it became apparent that oil had leaked through a hole in the UST, resulting in substantial contamination of the soil.

In October of 1997, after receiving a report of the leak, the Massachusetts Department of Environmental Protection ("DEP") issued a Notice of Responsibility ("NOR") to the Leals and to Plaintiff Nascimento. The NOR designated Nascimento as a Potentially Responsible Party, and ordered him to "dispose of any Remediation Waste generated at the subject location ... including, without limitation, contaminated soil and/or debris." (Def.s' Memo. in Supp. Mot. Dismiss, Ex. 2, NOR at *2.)

At the time the leak was discovered, Nascimento was insured under Preferred Mutual's Commercial General Liability Policy No. CG 03 00 01 96 (the "Policy"). Nascimento promptly notified Preferred Mutual of the leak. On February 15, 2005, the Leals and their insurer, Arbella Mutual Insurance Company, filed a lawsuit against Nascimento (the "Leal complaint"), alleging that Nascimento was legally responsible for the environmental damage caused by the leak. The Leal complaint

sought recovery of response costs, pursuant to Mass. Gen. Laws ch. 21E, §§ 4 and 4A, and compensation for property damage related to the spill, pursuant to Mass. Gen. Laws ch. 21E, § 5. The Leals alleged that Nascimento, as the sole user of the UST, failed to comply with the October 1997 NOR. Given Plaintiff's failure to act, the Leals undertook the clean-up of the oil spill themselves. The complaint seeks reimbursement of costs associated with the investigation, assessment, reporting, and remediation of the property damage.[3]

In a letter dated March 25, 2005, Nascimento's attorney notified Preferred Mutual of the Leal complaint. On April 15, 2005, a Senior Claim Representative responded with a letter denying coverage based on the Policy's pollution exclusion clause. On June 13, 2005, Nascimento asked Preferred Mutual to reconsider. After consulting with its outside counsel, Preferred Mutual affirmed the denial. A second request for reconsideration was denied on February 15, 2006.

On March 28, 2006, Nascimento filed a three-count complaint against Preferred Mutual in the Hampden County Superior Court, seeking a declaratory judgment concerning the parties' rights and obligations under the Policy (Count I), damages for breach of contract (Count II), and damages for violation of Mass. Gen. Laws ch. 93A (Count III). On April 26, 2006, Preferred Mutual removed the action to the federal district court on diversity grounds, and on May 2, 2006, Defendant

---

**3.** More specifically, the Leal complaint alleges that:

[Nascimento] ... caused or [is] otherwise legally responsible for a release of fuel oil at the premises of [the Leals], which required performance of response actions. [The Leals] made demand upon [Nascimento] ... to perform response actions at the Property, most of which [Nascimento]

failed to undertake. [The Leals] have incurred necessary costs to address the conditions resulting from the release of fuel oil caused by [Nascimento's] actions. [Nascimento is] liable to [the Leals] for reimbursement....
(Def.'s Mem. in Supp. Mot. Dismiss, Ex. 3, Leal Complaint at *5).

filed the motion now at issue. On September 19, 2006, the court heard argument on the parties' motion.

### B. *The Policy.*

The Policy provides that the insurer "will pay those sums that [the insured] becomes legally obligated to pay as damages because of ... 'property damage' to which this insurance applies. [The insurer also has] the right and duty to defend [the insured] against any 'suit' seeking those damages." The Policy also contains several of what are often referred to as "absolute" pollution exclusions:

2(f)(1)(a) "[P]roperty damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants ... [a]t or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

2(f)(1)(b) "[P]roperty damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants ... [a]t or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

2(f)(2)(a) Any loss, cost or expense arising out of any ... [r]equest, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants;

2(f)(2)(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

The Policy defines pollutants to include "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." "Waste" is defined as "materials to be recycled, reconditioned or reclaimed." "Property damage" means "[p]hysical injury to tangible property, including all resulting loss of use of that property" or "[l]oss of use of tangible property that is not physically injured."

### III.  *LEGAL STANDARD*

The dispositive question in this case is whether the Policy's pollution exclusion clause relieves Preferred Mutual from the duty to defend and indemnify Nascimento for any liability he may have for the damage caused to the Leal's property by the UST leak. Because there are no disputes of material fact, the court's decision turns on a pure question of law—the interpretation of the relevant provisions of the Policy.[4]

"[T]he initial duty of a liability insurer to defend third-party actions against the insured is decided by matching the third-party complaint with the policy provisions: if the allegations of the complaint are 'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense." *Great Am. Ins. Co. v. Riso, Inc.,* 479 F.3d 158, 160 (1st Cir.2007)(citing *Sterilite Corp. v. Cont'l Cas. Co.,* 17 Mass.App.Ct. 316, 318, 458 N.E.2d 338 (1983)).

The scope of an insurer's duty to defend is "based not only on the facts alleged in

---

**4.** According to the parties, the only issue that remains open on discovery involves Nascimento's potential ownership of the UST. That issue is moot in light of the court's decision to award summary judgment to Preferred Mutual on all of Nascimento's claims.

the complaint but also on the facts that are known or readily knowable by the insurer." *Desrosiers v. Royal Ins. Co. of Am.,* 393 Mass. 37, 40, 468 N.E.2d 625 (1984). Nonetheless, when the allegations in the underlying complaint "lie expressly outside the policy coverage and its purpose, the insurer is relieved of the duty to investigate" or defend the claimant. *Terrio v. McDonough,* 16 Mass.App.Ct. 163, 168, 450 N.E.2d 190 (1983); *see also Metro. Prop. & Cas. Ins. Co. v. Fitchburg Mut. Ins. Co.,* 58 Mass.App.Ct. 818, 820, 793 N.E.2d 1252 (2003) (no duty to defend a claim specifically excluded from coverage).[5]

A plaintiff bears the initial burden of proving coverage under the policy. *Mt. Airy Ins. Co. v. Greenbaum,* 127 F.3d 15, 19 (1st Cir.1997) (applying Massachusetts law). Preferred Mutual does not contest Nascimento's assertion that the Leal complaint falls within the Policy's general insuring provisions.

When the insured demonstrates the existence of coverage, the burden then shifts to the insurer to prove that an exclusion applies. *Highlands Ins. Co. v. Aerovox, Inc.,* 424 Mass. 226, 231, 676 N.E.2d 801 (1997) (stating "where the exception is in another separate and distinct clause of the ... contract ... then the burden is upon the party relying on such exception"). The parties agree that if Preferred Mutual can demonstrate that any one of the four pollution exclusions in the Policy applies, then its denial of coverage must be deemed proper as a matter of law.[6]

 The best place to begin is with the wording of the exclusions themselves.

Interpretation of the language of the exclusion presents a question of law.... In this interpretation, we are guided by three fundamental principles: (1) an insurance contract, like other contracts, is to be construed according to the fair and reasonable meaning of its words .... (2) exclusionary clauses must be strictly construed against the insurer so as not to defeat any intended coverage or diminish the protection purchased by the insured, ... and (3) doubts created by any ambiguous words or provisions are to be resolved against the insurer.

*Camp Dresser & McKee, Inc. v. Home Ins. Co.,* 30 Mass.App.Ct. 318, 323–324, 568 N.E.2d 631 (1991).

In making its analysis, the court should consider " 'what an objectively reasonable insured, reading the relevant policy language, would expect to be covered.' " *Hakim v. Mass. Ins. Insolvency Fund,* 424 Mass. 275, 282, 675 N.E.2d 1161 (1997) (citation omitted).

An ambiguity exists in an insurance contract when its operative language is susceptible to more than one meaning. *Mt. Airy,* 127 F.3d at 19. "However, an ambiguity is not created simply because a controversy exists between the parties, each favoring an interpretation contrary to the other." *Lumbermens Mut. Cas. Co. v. Offices Unlimited, Inc.,* 419 Mass. 462, 466, 645 N.E.2d 1165 (1995).

---

**5.** "The duty to defend is broader than the duty to pay or indemnify...." *Liberty Mut. Ins. Co. v. SCA Servs., Inc.,* 412 Mass. 330, 335 n. 4, 588 N.E.2d 1346 (1992) (citations omitted). The duty to indemnify attaches only "when a judgment within the policy coverage is rendered against [the] insured." *Boston Symphony Orchestra, Inc. v. Commer-*

*cial Union Ins. Co.,* 406 Mass. 7, 12, 545 N.E.2d 1156 (1989).

**6.** If the insurer demonstrates that coverage is excluded, the burden shifts back to the insured to show that an exception to the exclusion applies. *Mt. Airy,* 127 F.3d at 19.

## IV. DISCUSSION

The court will focus on section 2(f)(2)(a) of the Policy as this exclusion most closely matches the allegations set out in the Leal complaint.[7] Section 2(f)(2)(a) encompasses any "demand" that the insured "test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants."

■ At the heart of the dispute over the application of the section 2(f)(2)(a) exclusion is the interpretation of the word "pollutant." The Policy defines "pollutants" to include "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." Nascimento argues that a reasonable person would not think of oil as a "pollutant."

The First Circuit addressed a similar argument in construing the effect of an absolute pollution exclusion clause in a case involving an industrial oil spill. *Dryden Oil Co. of New England v. Travelers Indem. Co.*, 91 F.3d 278, 284 (1st Cir.1996). The court recognized that oil or industrial chemicals may not necessarily constitute pollutants in all forms and circumstances. *Id.* "[H]owever, given the policy definition of 'pollutants' ..., the absolute pollution exclusion language ... would not have permitted an objectively reasonable policyholder to expect liability coverage for contamination resulting from 'spills or releases of oil' ... during the transfer, storing, mixing, and manufacturing process. ..."

*Id.* (citation omitted). The court held that at the very least, an objectively reasonable policyholder would regard spills or releases of oil, industrial lubricants, or hazardous material as "materials to be disposed of or waste." *Id.* (citing *U.S. Liab. Ins. Co. v. Bourbeau*, 49 F.3d at 786, 788 (1st Cir. 1995)).

Although policy exclusions are to be construed strictly, Massachusetts courts have consistently held oil to be a "pollutant" under similar policy language. *Hanover New England Ins. Co. v. Smith*, 35 Mass. App.Ct. 417, 621 N.E.2d 382 (1993) (oil burner leak held to be a contaminant); *Halstead Indus., Inc. v. Home Ins. Co.*, No. 9603835, 1998 WL 34066141 at *4 (Mass.Super.Jan.14, 1998) (fuel oil released onto land held to be a pollutant); *Town of Wakefield v. Royal Ins. Co.*, No. 94–1579, 1995 WL 433585, at *3 (Mass.Super. July 20, 1995) (boiler room oil leak spilled into sewage system and transmitted to water treatment plant held to be a pollutant); *Rubin v. St. Paul Fire and Marine Ins. Co.*, No. 931261, 1995 WL 809524, at *5 (Mass.Super.Apr.19, 1995) ("[a]s a matter of law either lead or oil would fulfill the language of the pollution exclusion"). This court similarly finds that # 2 home heating oil leaked or spilled from a UST into the surrounding environment is a "pollutant" within the meaning of section 2(f)(2)(a) of the Policy.

■ Nascimento's final argument relies on *Utica Mut. Ins. Co. v. Hall Equip.,*

---

7. The three other exclusions present a less comfortable fit with allegations of the Leal complaint. As to section 2(f)(1)(a), the parties dispute whether Nascimento in fact "owned or rented" the UST.

As to sections 2(f)(1)(a) and (b), Nascimento strenuously disputes Preferred Mutual's contention that the UST can be construed to be a "premises, site or location" within the meaning of either clause.

Finally, Nascimento argues that section 2(f)(2)(b) is inapplicable as the dispute with Preferred Mutual is over the claim of a private actor and not a claim or suit by a governmental authority. The court need not address these arguments having determined that section 2(f)(2)(a) is dispositive of the case.

*Inc.,* 73 F.Supp.2d 83 (D.Mass.1999) *aff'd,* 292 F.3d 77 (1st Cir.2002), where Judge Lasker distinguished claims for the reimbursement of remediation costs from claims for related nonremediation damages. *Id.* at 87. The pollution exclusion clause in *Utica,* like the clause at issue here, excepted coverage for any "cost or expense arising out of any . . . demand .. that any insured . . . monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants."

The First Circuit agreed with Judge Lasker that by employing the overly broad term "in any way respond," the pollution exclusion clause gave rise to an ambiguity, "particularly since the preceding listing of activities pertained exclusively to remediation efforts—*viz.,* testing or monitoring for, cleaning up, removing or containing the pollutant." *Utica,* 292 F.3d at 83. The Court of Appeals concluded that a reasonable insured, reading the policy as a whole, could construe the term "respond" as limiting the scope of the exclusion to remediation (response) costs. *Id.* at 82. Invoking the principle that "irresolvably ambiguous *coverage exclusions* are to be strictly construed against the insurer," the First Circuit held that the exclusion did not apply to non-remediation property damages. *Id.* (emphasis in original).

Plaintiff's reliance on *Utica* as it pertains to the defense of the Leal complaint is misplaced. In drawing a distinction between remediation and non-remediation damages, Judge Lasker carefully observed that "although Massachusetts law provides separate statutory provisions for recovery of 'response costs' and 'property damages,' . . . it does not follow that 'response costs' and 'property damages' are mutually exclusive categories." *Utica,* 73 F.Supp.2d at 91 (citing *Guar.-First Trust Co. v. Textron, Inc.,* 416 Mass. 332, 338, 622 N.E.2d 597 (1993) (distinguishing between Mass. Gen. Laws ch. 21E § 4 which governs response costs, and § 5, which addresses damage to real and personal property)).[8]

In the case now before the court, while the Leal complaint refers to both Mass. Gen. Laws ch. 21E § 4 and § 5, all of the claims for damages set out in the complaint involve *remediation* costs incurred by the Leals in cleaning up the leak. As the Leals have not made any claim for damages recoverable under § 5, section 2(f)(2)(a) of the Policy excludes coverage, even under the broadest possible reading of Judge Lasker's holding in *Utica.* As no duty to defend attached under the Policy by operation of section 2(f)(2)(a), Preferred Mutual's Motion to Dismiss must be allowed.

## V. CONCLUSION

For the foregoing reasons, Preferred Mutual's Motion to Dismiss (treated by agreement as a Motion for Summary Judgment)(Dkt.No.3) is hereby ALLOWED. The Clerk will enter judgment for Preferred Mutual on all claims of the complaint. The case may now be closed.

It is So Ordered.

---

**8.** Recovery under Mass. Gen. Laws ch. 21E § 4 is limited to the reimbursement of cleanup costs such as costs of assessment, containment, and removal. *Black v. Coastal Oil New England, Inc.,* 45 Mass.App.Ct. 461, 464, 699 N.E.2d 353 (1998). Recovery under § 5, on the other hand, encompasses any diminution in the value of the property resulting from permanent damage, as well as "actions for the incidents of cleanups such as related restoration and repair work and lost rental value suffered during the cleanup and repair period." *Id.* at 467, 699 N.E.2d 353.