# United States Court of Appeals

## For the First Circuit

No. 07-1792

JACK NASCIMENTO,

Plaintiff, Appellant,

v.

PREFERRED MUTUAL INSURANCE COMPANY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

Before

Boudin, Chief Judge,
Selya, Senior Circuit Judge,
and Gelpí,[*] District Judge.

Kevin D. Withers, with whom Robert L. Quinn and Egan, Flanagan & Cohen, P.C. were on brief, for appellant.
Michael J. Case, with whom Mark R. Freitas, Robert D. Sullivan, Jr., and Wilson, Elser, Moskowitz, Edelman & Dicker LLP were on brief, for appellee.

January 18, 2008

---

[*] Of the District of Puerto Rico, sitting by designation.

**GELPÍ**, <u>District Judge</u>.    Jack Nascimento appeals a district court judgment declaring that Preferred Mutual Insurance Company ("Preferred Mutual") is under no contractual obligation to defend him in an environmental liability suit brought against him by his neighbors, Tiago and Maria Leal.   We affirm, albeit on slightly different grounds than those relied upon by the district court.

## I.          Relevant Factual and Procedural Background

On January 9, 1964, Nascimento purchased the property at 239 Hubbard Street, Ludlow, Massachusetts ("Nascimento's property").   Nascimento's property had been part of a larger lot that included the premises at 235 Hubbard Street ("the 235 property").  The 235 property contained an underground storage tank ("UST") with a fuel line connecting to the oil furnace at Nascimento's property.  The UST was located immediately adjacent to the foundation of Nascimento's garage.  Nascimento was the sole user of the UST, which stored the home heating oil used to heat his automotive repair business.   In November of 1982, Nascimento retired, sold his business, and leased his property.  From 1982 to 1997, the lessee purchased heating oil and stored it in the UST for continued heating of Nascimento's property.

In 1979, the Leals purchased the 235 property.   In September of 1997, they applied for a refinancing mortgage loan. The lender instructed the Leals to remove the UST or render it

inactive as a condition to financing. The Leals hired an excavating company to remove the UST. During the October 15, 1997 excavation, the Leals discovered that oil had leaked through a hole in the UST causing substantial contamination of the soil. On October 20, 1997, the Massachusetts Department of Environmental Protection issued a Notice of Responsibility to the Leals and Nascimento ordering them to clean up the spill. The Leals asked Nascimento to take responsibility for the loss, but he refused. Therefore, the Leals undertook the clean-up of the oil spill themselves, thereby incurring expenses for investigation, assessment, reporting, and remediation of the property damage.

On February 15, 2005, the Leals sued Nascimento in Massachusetts Superior Court, Hampden County (the "Leal suit" or the "Leal complaint"), on various counts:

Count I - Continuing Trespass,

Count II - Continuing Nuisance,

Count III - Negligence,

Count IV - Response Costs Pursuant to Mass. Gen. Laws ch. 21E, §§ 4 and 4A,

Count V - Damage to Real Property Pursuant to Mass. Gen. Laws ch. 21E, §5, and

Count VI - Declaratory Judgment Pursuant to Mass. Gen. Laws ch. 231A.

The Leals' allegations and prayer as to each Count were as follow:

I. Defendants' conduct constitutes trespass on Plaintiffs' property.

II. Defendants' actions and inaction has infringed upon Plaintiffs' use and enjoyment of their property.

III. Defendants, and each of them, deviated from the standard of care owed Plaintiffs and proximately caused injuries to Plaintiffs.

IV. Defendants, and each of them, caused or are otherwise legally responsible for a release of fuel oil at the premises of Plaintiffs, which required performance of response actions.

V. As a result of such release, the Leals sustained significant damage to their real property.

VI. [D]eclaring that Defendants, and each of them, are liable jointly and severally for all response costs incurred, or to be incurred, in connection with the performance of response actions to address the release of fuel oil occurring at the property and discovered on October 15, 1997.

On March 25, 2005, Nascimento placed a claim with Preferred Mutual requesting it to defend and indemnify him under his Commercial General Liability policy No. CG 03 00 01 96, effective from November 9, 1996 to November 9, 1997 ("the CGL policy"). On April 15, 2005, Preferred Mutual denied coverage under the CGL policy's total pollution exclusion, which reads in pertinent part:

This insurance does not apply to: . . .

f. Pollution

1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

    a) At or from any premises, site, or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

    b) At or from any premises, site or location which is or was at any time owned or occupied by any insured or others for the handling, storage, disposal, processing or treatment of waste; . . .

2) Any loss, cost or expense arising out of any:

    a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

    b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Nascimento asked for reconsideration on two subsequent occasions, but Preferred Mutual reaffirmed its denial.

On March 28, 2006, Nascimento filed this action in the Massachusetts Superior Court, Hampden County, seeking a declaratory judgment against Preferred Mutual regarding his policy and the Leal suit. Nascimento also sought damages for breach of contract and for violation of Mass. Gen. Laws ch. 93A. On April 26, 2006, Preferred Mutual removed this action to federal court invoking diversity jurisdiction and filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). On September 19, 2006, the district court heard oral arguments, and the parties agreed to treat the motion as one for summary judgment. On March 20, 2007, the district court granted the motion holding that: (1) the home heating oil is a pollutant; (2) all of the Leals' claims against Nascimento involved remediation costs incurred by the Leals in cleaning up the oil spill; and (3) since the loss is not covered, Preferred Mutual has no duty to defend or indemnify Nascimento in the Leal suit. Nascimento v. Preferred Mut. Ins. Co., 478 F. Supp. 2d 143 (D. Mass. 2007). The district court based its decision solely on section f(2)(a) of the total pollution exclusion.[1] On March 28, 2007, Nascimento filed a motion to amend factual findings, reconsider allowance of defendant's motion for summary judgment, and vacate judgment ("motion for reconsideration"). The

_____

[1]Nascimento disputes the ownership of the UST, but the district court held that the dispute was not material to the insurance coverage question. We agree. The uncontested facts show that Nascimento occupied the UST. Therefore, the ownership issue does not affect our analysis.

-6-

district court denied the same on April 17, 2007.  Nascimento now appeals.

## II.        Discussion

On appeal, we consider whether the district court erred in holding that the total pollution exclusion bars coverage for Nascimento's pollution cleanup cost claim and property damage claim.  We hold that the district court did not err.

The district court treated Preferred Mutual's motion to dismiss as one for summary judgment.  Therefore, we review the district court's decision *de novo*.  See Anderson v. Comcast Corp., 500 F.3d 66, 71 (1st Cir. 2007); Brooks v. AIG SunAmerica Life Assurance Co., 480 F.3d 579, 586 (1st Cir. 2007).  "This standard of review permits us to embrace or reject the rationale employed by the lower court and still uphold its order for summary judgment." Houlton Citizens' Coal. v. Town of Houlton, 175 F.3d 178, 184 (1st Cir. 1999).  "[I]t is within our discretion to affirm the district court's entry of summary judgment on any ground revealed by the record."  Morales-Vallellanes v. Potter, 339 F.3d 9, 18 (1st Cir. 2003); see also Geffon v. Micrion Corp., 249 F.3d 29, 35 (1st Cir. 2001); Burns v. State Police Ass'n, 230 F.3d 8, 9 (1st Cir. 2000).

Massachusetts law controls in this diversity action.  See B&T Masonry Constr. Co. v. Pub. Serv. Mut. Ins. Co., 382 F.3d 36, 38 (1st Cir. 2004).  Under Massachusetts law, the interpretation of an insurance policy and the application of policy language to known

facts pose questions of law for the court to decide.  Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 394, 788 N.E.2d 522, 530 (2003); Specialty Nat'l Ins. Co. v. OneBeacon Ins. Co., 486 F.3d 727, 732 (1st Cir. 2007).  In the absence of an ambiguity, we must construe the words of the policy in their usual and ordinary sense.  See Home Ins. Co. v. Liberty Mut. Fire Ins. Co., 444 Mass. 599, 602, 830 N.E.2d 186, 189 (2005); Specialty Nat'l, 486 F.3d at 732.

A court must further determine whether a liability insurer has the initial duty to defend third-party actions against the insured by matching the third party's complaint with the policy provisions.  Herbert A. Sullivan, 439 Mass. at 394, 788 N.E.2d at 530.  "[I]f the allegations of the complaint are 'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense."  Id.  "The scope of an insurer's duty to defend is based on 'the facts alleged in the complaint and those facts which are known to the insurer.'" Id. (quoting Boston Symphony Orch., Inc. v. Commercial Union Ins. Co., 406 Mass. 7, 10-11, 545 N.E.2d 1156, 1158 (1989)); see also Open Software Found., Inc. v. U.S. Fid. & Guar. Co., 307 F.3d 11, 14-15 (1st Cir. 2002) (holding that, under Massachusetts law, insurer must examine plaintiff's allegations in conjunction with facts it knows or readily should know when determining whether coverage exists under policy).

In the absence of a complaint that might trigger coverage, an insured cannot force its insurer to defend him by simply providing to the insurer facts which, if proven, would create coverage. See Boston Symphony, 406 Mass. at 15, 545 N.E.2d at 1160; Open Software, 307 F.3d at 16. The duty to defend analysis is a process of "envisaging what kinds of losses may be proved as lying within the range of the allegations of the complaint, and then seeing whether any such loss fits the expectation of protective insurance reasonably generated by the terms of the policy." Herbert A. Sullivan, 439 Mass. at 394, 788 N.E.2d at 530-31 (quoting Sterilite Corp. v. Cont'l Cas. Co., 17 Mass. App. Ct. 316, 318, 458 N.E.2d 338, 341 (1983)). The complaint only needs to show a possibility that the liability claim falls within the coverage of the insurance policy. See id. at 394, 788 N.E.2d at 531. However, when the allegations in the complaint lie plainly outside the coverage, then the insurer is relieved of the duty to investigate and defend the insured. See id. at 394-95, 788 N.E.2d at 531.

Under Massachusetts law, the insured bears the burden of proving coverage under a CGL policy. Markline Co. v. Travelers Ins. Co., 384 Mass. 139, 140, 424 N.E.2d 464, 465 (1981); Mt. Airy Ins. Co. v. Greenbaum, 127 F.3d 15, 19 (1st Cir. 1997). If the insured satisfies his burden, then the insurer must prove that an exclusion applies in order to avoid coverage. See Great Sw. Fire

<u>Ins. Co.</u> v. <u>Hercules Bldg. & Wrecking Co.</u>, 35 Mass. App. Ct. 298, 302, 619 N.E.2d 353, 356 (1993); <u>Mt. Airy</u>, 127 F.3d at 19.

In this case, Preferred Mutual does not contest that the Leal suit falls within the CGL policy's general provisions but instead asserts that the total pollution exclusion bars coverage. Therefore, the burden falls upon Preferred Mutual to prove that the exclusion applies. We hold that it does apply, although we rely upon a different section of the total pollution exclusion than the district court.

The district court held that all of the damages claims set out in the Leal complaint involved remediation costs. Relying solely upon section (f)(2)(a), the district court held that the CGL policy excluded coverage for such remediation damages. <u>Nascimento</u>, 478 F. Supp. 2d at 149. On appeal, Nascimento challenges the district court's holdings. He concedes that section (f)(2)(a) bars remediation damages. He avers, however, that the Leal complaint seeks both remediation and non-remediation damages. Nascimento argues that, under <u>Utica Mutual Insurance Co.</u> v. <u>Weathermark Investments, Inc.</u>, 292 F.3d 77 (1st Cir. 2002),[2] Preferred Mutual

---

[2]In <u>Utica</u>, this court analyzed the same exclusionary language as appears in Nascimento's CGL policy. <u>See</u> <u>Utica</u>, 292 F.3d at 79. Applying Massachusetts law, the court held that the term "respond" in the f(2)(a) exclusionary language was ambiguous and thus construed it against the insurer which drafted the policy. <u>See</u> <u>id.</u> at 83. The court held that the section f(2)(a) exclusionary language does not bar coverage for non-remediation costs. <u>See</u> <u>id.</u> at 84. The non-remediation damages in <u>Utica</u> included compensation for permanent injury to the property or diminution of value. <u>See</u>

must defend him in the Leal suit because the Leal complaint includes claims for non-remediation damages.

In conducting our duty to defend analysis, the parties agree that we may review the documents Nascimento submitted to Preferred Mutual when he requested coverage under the CGL policy. See Boston Symphony, 406 Mass. at 11, 545 N.E.2d at 1158 (noting duty to defend based on facts alleged in complaint and those facts known by insurer). These documents include the Leal complaint, its cover sheet, and Nascimento's attorney's correspondence with Preferred Mutual. Section f(1)(a) of the CGL policy excludes "'property damage' arising out of the actual . . . discharge, dispersal, seepage, migration, release or escape of pollutants . . . at or from any premises, site, or location . . . which is or was at any time . . . occupied by . . . any insured." Leaked home heating oil constitutes a pollutant. See McGregor v. Allamerica Ins. Co., 449 Mass. 400, 403, 868 N.E.2d 1225, 1227 (2007). Webster's New World Collegiate Dictionary defines "occupy" as "to take up or fill up" or "to take possession of." Webster's New World Collegiate Dictionary 858 (11th ed. 2003). Nascimento was the sole user of the UST. He continuously heated his property using oil stored at the UST. Therefore, under the usual and

---

id. at 82. Such damages, the court noted, are recoverable pursuant to Mass. Gen. Laws ch. 21E, §5(a)(iii). See id. at 83. Ultimately, Utica is irrelevant to our decision here given that we rely upon section f(1)(a) of the total pollution exclusion rather than section f(2)(a).

ordinary sense of the word "occupy," Nascimento occupied the UST—the source of the oil leak that caused the property damage. Consequently, any property damage sustained by the Leals because of the oil leak is barred from coverage under section f(1)(a) of the total pollution exclusion. This reasonable interpretation of section f(1)(a) renders moot any distinction that Nascimento asserts between remediation and non-remediation damages.

The McGregor decision further supports the conclusion that, under section f(1)(a) of the total pollution exclusion, the allegations in the Leal complaint fall outside the coverage of Nascimento's policy. Following the district court's decision in this case and during the pendency of this appeal, the Massachusetts Supreme Judicial Court decided McGregor, in which it interpreted the same total pollution exclusion clause as appears in Nascimento's policy. The McGregor plaintiff installed a furnace in a residence owned by the Staeckers. McGregor, 449 Mass. at 401, 868 N.E.2d at 1226. Six years later, the supply line leaked oil, and the Staeckers claimed the plaintiff was negligent while installing the furnace. Id. The Massachusetts Department of Environmental Protection issued a notice of responsibility to the Staeckers directing them to remediate the environmental contamination caused by the oil. Id. The Staeckers sued the plaintiff seeking to recover clean-up costs and lost rental income from the property during the clean-up. Id. The plaintiff had a

-12-

CGL policy with the defendant, who denied the claim under its total pollution exclusion–the same language as in this case. Id. at 402, 868 N.E.2d at 1226-27.

The McGregor court held that home heating oil is a pollutant under the policy. Id. at 403, 868 N.E.2d at 1227. In so holding, the court "consider[ed] both claims, [lost rental income and remediation costs], as did the [trial] judge, in determining whether they involve[d] pollutants." Id. at 403 n.2, 868 N.E.2d at 1227 n.2. The McGregor court went on to hold that the total pollution exclusion barred coverage for all pollutant damages, both remediation and non-remediation, and that the insurer did not have to indemnify or defend the insured. Id. at 403, 868 N.E.2d at 1227. Additionally, the court noted that plaintiff's bad faith claim did not need to be addressed "given our conclusion that the Staeckers'[remediation and non-remediation] claims are excluded from coverage." Id. at 405 n.4, 868 N.E.2d at 1228 n.4.

The McGregor decision binds this court sitting in diversity. See B&T Masonry., 382 F.3d at 38; U.S. Liab. Ins. Co. v. Bourbeau, 49 F.3d 786, 789 (1st Cir. 1995). Under McGregor, the total pollution exclusion in Nascimento's CGL policy bars all of the Leals' claims. McGregor clearly holds that, once the oil leaks, it becomes a pollutant. Further, McGregor holds that once the oil becomes a pollutant, the total pollution exclusion of the CGL policy is triggered and coverage for remediation and non-

-13-

remediation claims is barred.  In this case, the home heating oil leaked from the UST Nascimento continuously used.  The leak caused the pollution damage for which the Leals seek reimbursement. Therefore, section f(1)(a) of the total pollution exclusion was triggered, and Preferred Mutual has no duty to defend Nascimento in the Leal suit.[3]

   After *de novo* review, we conclude that summary judgment in favor of Preferred Mutual was proper because the allegations in the Leal complaint lie expressly outside the coverage of the CGL policy.[4]

   Wherefore, the district court's judgment is affirmed.

---

   [3]When the district court decided this case based on section f(2)(a), it did not have the benefit of the McGregor decision.

   [4]In light of our conclusion that section f(1)(a) bars coverage for the Leals' claim, we need not address Nascimento's challenge to the district court's ruling on his motion for reconsideration.

-14-