**Ann D. FERGUSON, individually and as executrix of the Estate of Neil Ferguson, Plaintiff,**

v.

**GENERAL STAR INDEMNITY CO., Defendant.**

**Civil Action No. 05–11970–JGD.**

United States District Court, D. Massachusetts.

Sept. 18, 2008.

---

Richard B. Kirby, Matthew P. Zayotti, Keegan Werlin LLP, Boston, MA, for Defendant.

James R. Knudsen, Whittenberg Knudsen, Wakefield, MA, David M. O'Connor, O'Connor & Associates, LLC, Boston, MA, for Plaintiff.

## MEMORANDUM OF DECISION AND ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

DEIN, United States Magistrate Judge.

### I. INTRODUCTION

The plaintiff, Ann D. Ferguson ("Ms.Ferguson"), hired attorney Steven Dean ("Attorney Dean") to represent her in connection with filing tax returns on behalf of the estate of her brother, Neil

Ferguson, who died in 1994. As a result of Attorney Dean's failure to file the returns in a timely manner and to make a required tax election in 1994, the estate incurred substantial interest and penalties which continued to accrue despite Attorney Dean's promises to take care of the matter. The estate taxes, penalties and interest due to the federal government were not fully paid until March 23, 1998, and the state was not fully paid until July 2001.

Ms. Ferguson subsequently brought a legal malpractice action against Attorney Dean, his partner David Scott, and their law firm Dean & Scott, P.A. The defendant General Star Indemnity Company ("General Star" or the "Insurer") provided a claims-based Lawyers Professional Liability insurance policy to the attorneys, which covered the period retroactive to September 12, 1997. General Star refused to provide a defense to the attorneys in the malpractice litigation on the grounds that the Ferguson claims arose out of events which preceded the retroactive coverage date of the policy, and/or were otherwise excluded from coverage. Ms. Ferguson eventually obtained a judgment in the malpractice litigation. In addition, she received an assignment of the attorneys' claims against General Star for improper refusal to defend the malpractice claim.

This matter is presently before the court on the parties' cross-motions for summary judgment. This court concludes that, based on the allegations of her complaint and any other information known to General Star at the time, Ms. Ferguson's claims arose out of events which occurred prior to the coverage date of the policy. Consequently, there was no duty to defend.[1] Therefore, the plaintiff's motion for

---

1. In light of this court's holding that there was no duty to defend, this court will not address the plaintiff's claim that due to its wrongful failure to defend, General Star is liable for the malpractice judgment Ms. Ferguson obtained. However, this court does note that where an insurer improperly fails to

summary judgment (Docket No. 42) is DE-NIED, and the defendant's motion for summary judgment (Docket No. 44) is ALLOWED.

## II. STATEMENT OF FACTS [2]

### Background

Ms. Ferguson's brother, Neil Ferguson, died on January 27, 1994. Ms. Ferguson was the executrix and sole heir of his estate. Ms. Ferguson hired Attorney Dean to provide advice and to prepare and file the estate tax returns. (PF ¶ 1). Attorney Dean failed to properly file the estate tax returns on or before October 27, 1994, when they were due. (DR ¶ 2). In addition, on that date he also failed to make an election under the provisions of Section 6166 of the Internal Revenue Code (26 U.S.C. § 6166) to defer the payment of the taxes. (PR ¶ 9). The tax returns were eventually filed in July 1996. (DR ¶ 2). The estate taxes, penalties and interest were not fully paid to the federal government until March 23, 1998, and were not fully paid to the state until July 2001. (DR ¶ 5).

### The Insurance Policy

In or about August 2000, Attorney Dean and his partner David Scott applied for Lawyers Professional Liability insurance with General Star. (DF ¶ 1). A policy was issued on or about September 13, 2000. (DF ¶ 3). The stated policy period was September 12, 2000 to September 12, 2001. (DF ¶ 4). In addition, the policy had a

"retroactive date" of September 12, 1997, and provided that "[t]he policy does not apply to CLAIMS **arising out of** negligent act(s), error(s), or omission(s) which took place prior to the Retroactive Date[.]" (DF ¶ 5 (emphasis added)). It is General Star's contention that Ms. Ferguson's claims for malpractice "arose out of" events which occurred prior to September 12, 1997. Ms. Ferguson states that there were independent acts of negligence post–1997 for which insurance coverage should have been provided, and because of which General Star had a duty to defend the action.

In connection with the insurance policy, the insureds also confirmed that they "had no knowledge prior to the effective date of this policy of any actual or alleged act, error, omission, circumstance or PERSONAL INJURY that could give rise to a CLAIM(S)...." (DF ¶ 6). General Star asserts that the defendants did, in fact, have such knowledge, and that this is an additional reason why coverage was properly denied. Ms. Ferguson disputes General Star's allegations of fact concerning the attorneys' knowledge. (See PR ¶¶ 40–41; PSF ¶¶ 1–5). In addition, as detailed below, General Star did not initially cite this as a basis for its decision to deny coverage.

### The Malpractice Lawsuit

Ms. Ferguson brought a legal malpractice suit in Norfolk Superior Court against Attorney Dean and his law firm, Dean & Scott, P.A. (Def.Ex.D). Attorney Dean

---

defend, it may under certain conditions still prove noncoverage, although it bears the burden of proof. See Utica Mut. Ins. Co. v. Fontneau, 70 Mass.App.Ct. 553, 558, 875 N.E.2d 508, 513 (2007), and cases cited.

**2.** Unless otherwise indicated the facts are derived from plaintiff's statement of undisputed facts as found in her memorandum (Docket No. 43) ("PF"); defendant's response to the plaintiff's statement of undisputed facts (Docket No. 50) ("DR"); defendant's state-

ment of undisputed facts as found in its memorandum (Docket No. 45) ("DF"); plaintiff's response to the defendant's statement of undisputed facts (Docket No. 54) ("PR"); and plaintiff's supplemental statement of facts (Docket No. 55) ("PSF"). The defendant's exhibits are attached to the Affidavit of Matthew Zayotti, Esq. (Docket No. 46) and the plaintiff's exhibits are attached to her memorandum (Docket No. 43), and her supplemental facts.

was served with a summons and the complaint on August 21, 2001. (DF ¶ 8). Therein, in relevant part, Ms. Ferguson alleged that the defendants represented her in connection with the estate from February 1994 until approximately February 2001. (Def. Ex. D at ¶¶ 5–6). She further alleged that the estate tax returns were due to be filed on October 27, 1994, and estate taxes were due to be paid on that date "absent allowed elections to pay in installments or extensions of time to pay taxes or file the tax returns." (Id. ¶ 7). The defendants "not only failed to ensure that they were prepared timely for filing, but also became an obstacle to their timely filing, such that the estate tax returns were not filed until on or about July 5, 1996." (Id. ¶ 8). The defendants were negligent, according to the plaintiff, for failing to file the returns in a timely manner, or to obtain an extension. (Id. ¶ 14). In addition, the defendants did not advise the plaintiff to make an election under section 6166 of the Internal Revenue Code so as to enable the taxes to be paid in installments. (Id. ¶ 16). It is undisputed that the election had to be made on October 27, 1994 absent any extension.

The plaintiff also alleged that the defendants "became an obstacle" in connection with the payment of taxes by failing "to act with reasonable ordinary speed in liquidating property and/or securing refinancing to pay the taxes, penalties, and interest due." (Id. ¶ 13). As a result of the defendants' conduct, including bad advice concerning financing alternatives and delays in acting to sell property, the plaintiff was unable to obtain financing in a timely manner and the federal taxes, interest and penalties were not paid in full until March 3, 1998 and the amounts due the state were not fully paid until July 2001. (Id.

¶¶ 13, 20–21, 23–25). The plaintiff continued to receive notices of amounts due until July 2001, and "on a few occasions prior to March 2001 attorney Dean told the Plaintiff that he would take care of the notices." (Id. ¶ 22).[3] Finally, the plaintiff also challenged the defendants' alleged failure "to inform the Plaintiff of the magnitude of the effect of the failure to file timely returns and pay taxes timely, including the penalty and interest rates[.]" (Id. ¶ 37). The plaintiff paid approximately $241,600 in penalties and interest. (Id. ¶ 27).

Attorney Dean gave General Star notice of Ms. Ferguson's lawsuit on August 21, 2001. (DF ¶ 10). Within 20 days of his having been served with the complaint, Attorney Dean was notified orally by General Star that it was denying coverage under the policy. (DF ¶ 11). The denial was confirmed by General Star in a letter dated December 6, 2001. (DF ¶ 12). The stated reason was that the events giving rise to the claim appeared to have occurred prior to the retroactive date of September 12, 1997.(Id.). In addition, while General Star "reserved the right to conduct further investigation and evaluation" of the matter, General Star stated in its denial letter that it had "no information at the present which would indicate that Dean & Scott was aware prior to the effective date of the policy of a claim and/or circumstance likely to give rise to a claim." (Def. Ex. G at 2).

Attorney Dean did not challenge General Star's denial of coverage. (DF ¶ 14). However, by letter dated May 1, 2002, Ms. Ferguson's counsel challenged General Star's decision. (DF ¶ 15). In this letter, counsel wrote that "[a]lthough the policy indicates that it does not cover alleged negligent acts prior to the retroactive date

---

3. It is undisputed that when notices of interest and penalties were issued, Attorney Dean told Ms. Ferguson that he would take care of them, including notices dated January 10, 2000, March 30, 2000, May 8, 2001 and July 10, 2001. (DR ¶ 7).

of September 12, 1997, it is our contention that all of the penalties and interest incurred by the estate were part of a continuing scheme which lasted until the middle of 2001." (Pl.Ex.6). After breaking down the amounts of penalties and interest due as of September 12, 1997, counsel stated:

> As we have explained in our demand letters and Complaint, Mr. Dean failed to make elections and apply for extensions which would have easily avoided the penalties and interest. Moreover, he delayed in facilitating financing which would have provided financing. Finally, even until 2001 he failed to communicate with Ms. Ferguson regarding the need to pay a balance of approximately $18,000 to the Commonwealth of Massachusetts. He had told her that he would "take care of this."

(*Id.*) After a review by a Claims Adjuster and an outside attorney, General Star confirmed its decision to deny coverage by letter dated September 4, 2002. (DF ¶¶ 16–21).

### The Addition of Attorney Scott

Several years later, on or about August 4, 2004, Attorney Scott was added as a party defendant to the malpractice case, and he gave notice to General Star by letter dated August 27, 2004. (DF ¶¶ 23–24). Around this time, Ms. Ferguson's counsel requested that General Star reconsider its disclaimer of coverage. (DF ¶ 22). General Star confirmed its denial of coverage to Attorney Scott by phone, and advised him that coverage was denied for the same reasons previously given to Attorney Dean. (DF ¶ 25). General Star's counsel then responded in writing to Ms. Ferguson's counsel's request for reconsideration, denying coverage on the stated grounds that the claim was a "known loss in progress" and that "the Declarations' prohibition of coverage for claims arising out of acts, errors or omissions which took place prior to the September 12, 1997 retroactive date are utterly preclusive of coverage...." (DF ¶ 27). The Second Amended Complaint, which includes Attorney Scott as a defendant, alleges the same type of wrongful conduct occurring after September 12, 1997 as the original complaint described above, including continued representation of the estate until 2001; the failure to act with reasonable speed to liquidate property and/or secure refinancing to pay the amounts due; the negligent or intentional obfuscation of the nature of the interest and penalties due; the failure to provide a summary of the assessment of penalties or interest so that Ms. Ferguson could determine the amounts due and paid; the failure to secure financing; and the continued provision of negligent advice which resulted in interest continuing to accrue on the state debt until late 2001. (*See* PR ¶ 9).

On November 4, 2004, Attorney Scott entered into a Settlement Agreement with Ms. Ferguson, which included an agreement that Attorney Scott would assign all of his rights under his malpractice insurance policy to Ms. Ferguson. (DF ¶ 28). By agreement, Attorney Dean assigned his rights under the policy to Ms. Ferguson as well. (DF ¶ 30). Ms. Ferguson tried her case against Attorney Dean, jury-waived, in May, 2005. A judgment against Attorney Dean was entered on May 7, 2005 for negligence awarding damages in the amount of $224,046.41 (DR ¶ 11). With one exception not here relevant, the plaintiff's Proposed Findings of Fact were incorporated into the court's decision, with Attorney Dean conceding to such findings. (DR ¶¶ 12–13). It was found that if Attorney Dean had made an election under Section 6166(a) of the Internal Revenue Code, no penalties would have been assessed, and interest would have been limited to approximately $15,000. The damage award was the full amount of interest and

penalties paid ($239,046.41), less $15,000, for a total of $224,046.41. (*See* DF ¶ 32).

In her Findings, Ms. Ferguson complained of various actions or omissions on the part of Attorney Dean of the type described in her complaint, such as the failure to obtain financing. However, the identifiable events occurred prior to the retroactive date of September 12, 1997. Moreover, there are no specific amounts of damages attributed to any specific occurrences or events. (*See* Pl.Ex. 2 at ¶¶ 60–68, 73–74).[4]

In response to a subpoena duces tecum served by General Star in the instant case it was determined that Attorney Dean's records relating to the Ferguson litigation had been mistakenly shredded along with other closed files in the spring of 2006, after the malpractice trial had been concluded. (DF ¶¶ 33–34).

Additional facts will be provided below where appropriate.

### III. ANALYSIS

#### A. *Summary Judgment Standard of Review*

 Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The mere existence of *some* alleged factual dispute will not alone withstand an otherwise properly supported motion for summary judgment; rather, there must be *genuine* issues of material fact in dispute to defeat summary judgment. *Anderson v. Liberty Lobby,*

*Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Moreover, in evaluating a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. at 2513. However, the court will not consider "conclusory allegations, improbable inferences, and unsupported speculation." *Galloza v. Foy,* 389 F.3d 26, 28 (1st Cir.2004) (citation omitted).

 "Cross-motions for summary judgment do not alter the basic Rule 56 standard, but rather simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." *Adria Int'l Group, Inc. v. Ferre Dev., Inc.,* 241 F.3d 103, 107 (1st Cir.2001). "When facing cross-motions for summary judgment, a court must rule on each motion independently, deciding in each instance whether the moving party has met its burden under Rule 56." *Dan Barclay, Inc. v. Stewart & Stevenson Servs., Inc.,* 761 F.Supp. 194, 197–98 (D.Mass.1991).

#### B. *The Duty to Defend*

 The principles to be applied in determining whether General Star had a duty to defend are well-established and oft-quoted. Thus, "[u]nder Massachusetts law, the interpretation of an insurance policy and the application of policy language to known facts pose questions of law for the court to decide." *Nascimento v. Preferred Mut. Ins. Co.,* 513 F.3d 273, 276 (1st Cir.2008), and cases cited. Absent an ambiguity, the words of the policy are to construed in their "usual and ordinary sense." *Id.,* and cases cited. In determin-

---

4. These Findings were unknown to the Insurer at the time it refused to provide a defense, and will not be considered in connection with that analysis. Nevertheless, given the absence of any identifiable post-September 12, 1997 event at trial, it seems unlikely that further inquiry by General Star in 2001 would have revealed information which would have established that there was coverage under the policy.

ing whether an insurer has the initial duty to defend, a court must match the third party's complaint with the policy provisions. *Id.* "If the allegations of the complaint are 'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense. The scope of an insurer's duty to defend is based on the 'facts alleged in the complaint and those facts which are known to the insurer.'" *Id.* (additional citations and punctuation omitted). However, if the complaint does not allege facts that trigger coverage, "an insured cannot force its insurer to defend him by simply providing to the insurer facts which, if proven, would create coverage." *Id.* at 277, and cases cited. On the other hand, the fact "that some or even many of the underlying claims may fall outside the policy coverage does not excuse the insurer from its defense obligations." *Dilbert v. Hanover Ins. Co.,* 63 Mass.App.Ct. 327, 331, 825 N.E.2d 1071, 1075 (2005).

■■■■ The duty to defend under Massachusetts law "is broader than, and independent of, the duty to indemnify." *Brazas Sporting Arms, Inc., v. Am. Empire Surplus Lines Ins. Co.,* 220 F.3d 1, 4 (1st Cir.2000), and cases cited. "The duty to defend analysis is a process of 'envisaging what kinds of losses may be proved as lying within the range of the allegations of the complaint, and then seeing whether any such loss fits the expectation of protective insurance reasonably generated by the terms of the policy.'" *Nascimento,* 513 F.3d at 277 (quoting *Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co.,* 439 Mass. 387, 394, 788 N.E.2d 522, 530–31 (2003) (additional citations omitted)). "The complaint only needs to show a possibility that the liability claims falls within the coverage of the insurance policy. However, when the allegations in the complaint lie plainly outside the coverage, then the insurer is relieved of the duty to investigate and de-fend the insured." *Id.* (citations omitted). Finally, "[u]nder Massachusetts law, the insured bears the burden of proving coverage" and, if that burden is met, "the insurer must prove that an exclusion applies in order to avoid coverage." *Id.,* and cases cited.

### *"Arising Out Of"*

■■■■ At issue in this case is whether the events complained of in the complaint filed by Ms. Ferguson "arise out of" events which took place prior to the retroactive date of September 12, 1997. Massachusetts case law instructs that "[t]he phrase 'arising out of' must be read expansively . . . ." *Bagley v. Monticello Ins. Co.,* 430 Mass. 454, 457, 720 N.E.2d 813, 816 (1999), *quoted* in *Fuller v. First Fin. Ins. Co.,* 448 Mass. 1, 6, 858 N.E.2d 288, 292 (2006). These cases "suggest a causation more analogous to 'but for' causation, in which the court examining the exclusion inquires whether there would have been personal injuries, and a basis for the plaintiff's suit, in the absence of the objectionable underlying conduct." *Fuller,* 448 Mass. at 6–7, 858 N.E.2d at 292 (internal and additional citations omitted). The phrase "'arising out of' is generally understood to mean 'originating from,' 'growing out of,' 'flowing from,' 'incident to,' or 'having connection with.'" *Brazas,* 220 F.3d at 7, and cases cited. Finally, Massachusetts law compels the court "to consider the source from which the plaintiff's personal injury originates rather than the specific theories of liability alleged in the complaint of the underlying civil action." *Id.* (internal quotations and punctuation omitted).

■■■■ In the instant case, considering the complaint as well as information provided by plaintiff's counsel to the insurer, the conduct complained of "arose out of" events which occurred prior to 1997. Most clearly, the failure to file tax returns and

the failure to make the Section 6166 election occurred in 1994, and all interest and penalties "originated from," "grew out of," "flowed from," were "incident to," or had "a connection with" those events of malpractice. Thus, "the source" of all of the plaintiff's injuries predated the retroactive date of the policy, and there was no duty to defend. *See New England Mut. Life Ins. Co. v. Liberty Mut. Ins. Co.*, 40 Mass. App.Ct. 722, 727, 667 N.E.2d 295, 299 (1996) (where policy did not cover personal injuries "arising out of" discrimination, and without the discriminatory acts "there would have been no personal injuries and, therefore, no basis for a suit against the insureds for misrepresentation, negligence, and loss of consortium" there was no duty to defend).

The plaintiff alleged in her complaint that the attorneys "became an obstacle" to having the taxes paid in a timely manner by, inter alia, giving bad advice, failing to sell property in a timely manner, failing to obtain financing, and failing to keep Ms. Ferguson apprised of the consequences of failing to make the tax payments. In addition, in response to overdue notices sent to the plaintiff, Attorney Dean represented that "he would take care of it." In the instant case, Ms. Ferguson argues that these behaviors continued after the retroactive date, and, therefore, there was potential coverage under the policy which, in turn, triggered the duty to defend. This court disagrees.

As an initial matter, these behaviors do not negate the fact that the plaintiff's injuries arose from the 1994 failure to file tax returns and make the payment election. The fact that Attorney Dean did not mitigate his damages arising out of his 1994 malpractice did not convert his 1994 malpractice into an event which occurred during the policy period. Moreover, even if this court were to assume that Attorney Dean's obligations extended beyond filing

the tax returns and making the proper election, and that these additional obligations were distinct from and did not arise out of the 1994 malpractice, there still was no duty to defend. As Ms. Ferguson's counsel himself described the situation, "it is our contention that all of the penalties and interest incurred by the estate were *part of a continuing scheme* which lasted until the middle of 2001." (Pl.Ex. 6 (emphasis added)). This so-called scheme began in 1994 and continued through 1997 and thereafter. The post–1997 events merely continued the inappropriate behavior, and "arose out of" events occurring prior to the retroactive date. *See Mt. Airy Ins. Co., v. Greenbaum*, 127 F.3d 15, 21 (1st Cir.1997) (where wrongful scheme began while defendant was not insured because of his status as a partner in a business, the fact that it "continued uninterrupted" thereafter past a change in status did not create coverage: the claim "arose out of conduct of a business enterprise" which began while there was no coverage, and there was no duty to defend).

The cases on which the plaintiff relies highlight why there was no coverage in the instant case. For example, in *Dash v. Chicago Ins. Co.*, No. 00–11911–DPW, 2004 WL 1932760 (D.Mass. Aug.23, 2004) the complaint alleged that Dash, as General Counsel of a corporation, committed legal malpractice. In addition, it alleged separately that "immediately following the period he served as ... General Counsel, Dash breached his duty of loyalty to the company and/or his ethical obligations to the company by, among other things" making misrepresentations. *Id.* at *2. The policy excluded from coverage claims which were "based on or arising out of the rendering of or failure to render legal services *as an employee*" and claims based on "the rendering of or failure to render Professional Services by the In-

sured *for his employer." Id.* at *6 (punctuation omitted; emphasis added). Since, the court reasoned, the allegations of the complaint included conduct by Dash while he was no longer an employee of the company, there was potentially coverage. *Id.* at *7. Therefore, there was a duty to defend. *Id.* In the instant case, the plaintiff, at most, alleged a "continuous scheme" which began before the policy went into effect and continued uninterrupted. There was no separate duty which arose within the policy period as distinct from Attorney Dean's obligations prior to the retroactive date. In short, the demarcation found in Dash did not exist in the instant case.

Similarly unavailing is the case of *Med. Prof'l Mut. Ins. Co. v. Weston OB/GYN Assoc., Inc.,* No. 012497, 14 Mass. L. Rptr. 431, 2002 WL 968858 (Mass.Super.Mar.6, 2002). In that case, a doctor failed to diagnose breast cancer. The doctor had an occurrence policy. The patient was examined before the insurance policy went into effect, and a lump was found, but not tested. The plaintiff had alleged in her complaint that the physician breached a continuing duty to investigate the lump which continued into the period covered by the policy. The court found that there was a genuine issue of material fact as to whether the physician had a continuing duty to investigate which continued into the policy period. *Id.* at *2.

The instant case involves a claims made policy, and not an occurrence policy. Moreover, the critical issue in this case was not even addressed in *Weston OB/GYN,* i.e., whether the injury "arose out of" acts, errors or omissions that took place prior to the effective date of the

policy. Unlike *Weston OB/GYN,* the instant case does not allege distinct obligations over time—rather it alleges a continuing scheme of wrongdoing which began prior to the retroactive date of the policy. As detailed above, the fact that a scheme continued into the policy period does not alter the fact that the injuries "arose out of" events which predated coverage. Consequently, this court finds that there was no duty to defend. *See 30 W. 15th St. Owners Corp. v. Travelers Ins. Corp.,* 165 A.D.2d 731, 563 N.Y.S.2d 784 (1990) (where sublease was entered into prior to the retroactive date of policy, and dispute arose about conditions and responsibilities from the date of the sublease and continuing into the coverage period, there was no duty to defend or indemnify). Since there was no duty to defend, General Star has no liability under Mass. Gen. Laws ch. 93A.[5]

### C. *"Known Loss" Exclusion*

General Star also contends that it had no duty to defend under the "known loss" doctrine.[6] As General Star argues, "because Attorney Dean knew of all of the facts that gave rise to the underlying claims against him long before he submitted his Application, and since Attorney Dean spoliated all of his files which could have included documentary evidence conclusively establishing his knowledge of such claims, there are no genuine issues of material fact and General Star is entitled to judgment as a matter of law dismissing all counts of the Plaintiff's Complaint because the underlying claims constitute an uninsurable 'known loss.'" (Def. Mem. (Docket No. 45) at 29). While it is not necessary to reach this issue in light of

---

**5.** In light of this holding, this court will not reach General Star's other defenses to the 93A claim.

**6.** This doctrine is found in the policy, as quoted above, which precluded coverage for

known "actual or alleged act, error, omission, circumstance or personal injury that could give rise to a claim." (DF ¶ 6 (punctuation omitted)).

this court's reading of the complaint, this court finds that there are disputed facts which would preclude the entry of summary judgment on this ground.

 The "known loss" doctrine is based on the premise that

> "the basic purpose of insurance is to protect against fortuitous events and not against known certainties. Parties wager against the occurrence or nonoccurrence of a specified event; the carrier insures against a risk, not a certainty.... Under the known loss doctrine, the insurable risk is eliminated where an insured knows, when it purchases a policy, that there is a substantial probability that it will suffer or has already suffered a loss. At that point, the risk ceases to be contingent and becomes a probable or known loss."

*Allmerica Fin. Corp. v. Certain Underwriters of Lloyd's, London*, 449 Mass. 621, 636, 871 N.E.2d 418, 430 (2007) (quoting *SCA Servs., Inc. v. Transp. Ins. Co.*, 419 Mass. 528, 532–33, 646 N.E.2d 394, 397 (1995)) (internal punctuation and additional citations omitted). The known loss doctrine is to be narrowly construed and only applies when there is actual knowledge that a loss has occurred or is substantially likely to occur. *Id.* at 637–38, 871 N.E.2d 418, 871 N.E.2d at 431.

In the instant case, there is no evidence that Attorney Scott had any information about Attorney Dean's conduct prior to the malpractice suit being filed, so the known loss doctrine would not apply to him. There are disputed facts in the record concerning whether Attorney Dean knew he had committed malpractice at the time he applied for the insurance resulting in a loss. The first notice that Ms. Ferguson was making a claim against him was a letter from her counsel in 2001. (PSF ¶ 2). There is evidence before this court that Attorney Dean denies being actually aware of the possibility of Ms. Ferguson's claims against him. (PSF ¶ 4). Also, as the trial judge in the malpractice litigation found, it is not certain that the estate would have qualified for the payment deferment. (Pl. Ex. 3 at 4–5). Therefore, it cannot be said with certainty on this record that Attorney Dean knew of the potential claim arising out of his failure to make a proper Section 6166 election. Similarly, with respect to the late filing, plaintiff alleged in her complaint that Attorney Dean "stated that the delay in filing the estate tax returns was due to the fact that they were so complicated and that the returns could not or should not be filed until the Plaintiff could pay the tax." (Def. Ex. D ¶ 19). While his advice was erroneous, this court cannot find as a matter of law on this record that Attorney Dean knew the advice was wrong, and that, as a result, a loss had occurred or was substantially likely to occur. Finally, General Star expressly stated in its initial letter denying coverage that it had no information that Attorney Dean had prior knowledge of the loss. Under such circumstances, summary judgment based on the known loss doctrine is not appropriate [7].

## IV. CONCLUSION

For all of the reasons detailed herein, the plaintiff's motion for summary judgment (Docket No. 42) is DENIED, and the defendant's motion for summary judgment (Docket No. 44) is ALLOWED.

---

**7.** There are similarly disputed facts concerning Attorney Dean's knowledge and intent in connection with the apparently inadvertent destruction of documents after the malpractice case was over. This court has made no determination, one way or the other, whether the destruction of the documents was appropriate.